O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 721, et al., | ) ) ) | Case No. EDCV 09-00561-VAP (JTLx) |
| Plaintiff, | ) ) ) | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) | |
| COUNTY OF RIVERSIDE, et al., | ) ) | |
| Defendants. | ) ) | |

Before the Court is a Motion for Summary Judgment ("Plaintiff's Motion") filed by Plaintiff Service Employees International Union, Local 721 ("Plaintiff" or "SEIU") and a Motion for Summary Judgment ("Defendant's Motion") filed by Defendant County of Riverside ("Defendant" or "County"). After considering the papers filed in support of and opposition to the Motions, and the arguments advanced at the April 18, 2011, hearing, the Court DENIES Plaintiff's Motion and GRANTS Defendant's Motion.

# I. PROCEDURAL HISTORY

## A. Background

On February 19, 2009, Plaintiff filed its Complaint in the California Superior Court for the County of Riverside, on behalf of itself and its represented members, Mai Moss, Lakeisha Brazile, Tammika Kelly, Glinda Velasquez, and Juan Lucero. (Doc. No. 1 (Not. of Removal) at Ex. A.) Plaintiff's Complaint alleged twelve claims for relief arising from the County's administration of the "County of Riverside 401(a) Retirement Plan for Part Time & Temporary Help Employees" ("the Plan"). (_Id._) On March 20, 2009, Defendants County, Ronald Komers, and Don Kent removed the action to this Court.[1] (Not. of Removal at 1.) Plaintiff filed its First Amended Complaint on August 28, 2009, removing Defendants Komers and Kent. (Doc. No. 21 (First. Am. Compl.) at 1.)

On November 12, 2010, after the Court granted Plaintiff's motion for leave to amend, Plaintiff filed its Second Amended Complaint ("SAC") on behalf of itself and its represented members, Lakeisha Brazile and Judy Leonard. (Doc. No. 52; _see_ Doc. No. 51 (Nov. 11, 2010,

---

[1] In addition to the County, Plaintiff's original Complaint named Ronald Komers, in his official capacity as Director of the Riverside County Human Resources Department, and Don Kent, in his official capacity as County-Treasurer Tax Collector and Trustee to the Plan. (_See_ Compl.)

Order granting Pls.' Mot. for leave to file SAC).)
Plaintiff's SAC is the operative complaint, and alleges
the following three claims for relief arising from the
County's administration of the Plan:

1. Declaratory Relief under 28 U.S.C. § 2201(A):
   Whether Defendant used the proper formula to
   calculate and pay lump-sum distributions under
   the Plan.

2. Declaratory Relief under 28 U.S.C. § 2201(A):
   Whether Defendant used the proper interest rate
   in determining which plan participants are
   entitled to normal monthly retirement benefits.

3. Breach of vested contractual pension rights
   arising from Defendant's failure to use the
   proper formula to calculate and pay lump-sum
   distributions under the Plan and Defendant's
   failure to use the correct proper interest rate
   to determine whether participants are entitled
   to normal monthly retirement benefits.

In its prayer for relief, Plaintiff seeks, <u>inter alia</u>:
(1) a declaration "as to the formula for lump sum
distributions of Plan participants who do not qualify for
normal retirement benefits;" (2) a declaration "as to the
correct interest rate that [D]efendant should have used
to determine whether participants were eligible for
normal retirement benefits;" and (3) "damages in the
amount of benefits lost by Plaintiffs and Plan

participants due to defendant's violations of the Plan."
(SAC at 18:13-19:5.)

Throughout its papers and during the April 18, 2011, hearing on these motions, Plaintiff contended that Ms. Leonard and Ms. Brazile are plaintiffs in their individual capacity and are asserting claims in their own right. (<u>See, e.g.</u>, Pl.'s Opp'n at 4-5; Pl.'s Reply at 2-3.) This contention lacks merit, as the SAC does not allege clearly Ms. Leonard or Ms. Brazile are proceeding in their individual capacities.

The caption on the first page of the SAC identifies the Plaintiff as "Service Employees International Union, Local 721, a Labor Organization, on its on [sic] behalf, <u>and on behalf of its represented members</u>, Lakeisha Brazile, and Judy Leonard." (SAC at 1 (emphasis added).) Thus, the caption alone does not indicate that Ms. Brazile or Ms. Leonard are proceeding as individuals; rather, it states that SEIU is proceeding on their behalf.

Moreover, Section II, Paragraph 7 of the SAC avers "Lakeisha Brazile and Judy Leonard are former or current Riverside County Temporary Assignment Program employees, <u>on whose behalf [SEIU] proceeds</u>. . . ." (SAC ¶ 7 (emphasis added).) Again, there is no indication – even

4

in the section of the SAC defining the parties to the action – that Ms. Brazile or Ms. Leonard are proceeding as individuals. Rather, paragraph 7 states explicitly that SEIU is proceeding on Ms. Brazile's and Ms. Leonard's behalf. Indeed, neither Paragraph 7 nor any other allegation in the SAC defines Ms. Brazile or Ms. Leonard as "Plaintiffs."

The allegations in the other sections of the SAC do not indicate otherwise, as the SAC's terminology is imprecise and leaves the nature of the parties in this action ambiguous. For example, although SEIU is a named Plaintiff, the SAC describes it periodically as "Petitioner." (See SAC ¶¶ 3, 6.) Additionally, although the SAC in places refers to "Plaintiffs," does not indicate that Ms. Leonard or Ms. Brazile are proceeding as individual Plaintiffs. (See, e.g., SAC ¶¶ 4-5.) Rather, it appears to be an allegation that SEIU is participating as both an individual Plaintiff, and an Associational Plaintiff. This interpretation comports fully with both the caption and Paragraph 7 of the SAC, which define Ms. Brazile and Ms. Leonard as representative members on whose behalf SEIU proceeds. (See SAC ¶ 7.)

In sum, Plaintiff's intimation in its papers, and argument at the April 18, 2011, hearing, that Ms. Brazile and Ms. Leonard are proceeding as individual plaintiffs lacks merit. Accordingly, Ms. Leonard's and Ms. Brazile's claims are only relevant here insofar as the claims confer associational standing on SEIU.[2]

**B. Motions for Summary Judgment**

    **1. Plaintiff's Motion**

On March 21, 2011, Plaintiff filed its Motion for Summary Judgment. (Doc. No. 58.) In support of its Motion, Plaintiff attached the following documents:

- Separate Statement of Uncontroverted Facts and Conclusions of Law ("Plaintiff's SUF");
- Declaration of Jordan D. Mazur ("Mazur Declaration"); and
- Exhibits A through O to the Mazur Declaration.

On March 28, 2011, Defendant filed its Opposition to Plaintiff's Motion ("Defendant's Motion"). (Doc. No. 60.) In support of its Opposition, Defendant attached the following documents:

- Statement of Genuine Issues ("Defendant's SGI"); and

---

[2] See Section IV.C., _infra_ (discussing the validity of Ms. Leonard's and Ms. Brazile's claims in their individual capacity).

- Declaration of Eric W. Lapointe ("Lapointe Declaration").

On April 4, 2011, Plaintiff filed its Reply ("Plaintiff's Reply"). (Doc. No. 64.)

### 2. Defendant's Motion

On March 21, 2011, Defendant filed its Motion for Summary Judgment. (Doc. No. 59.) In support of its Motion, Defendant attached the following documents:

- Statement of Uncontroverted Facts and Conclusions of Law ("Defendant's SUF");
- Declaration of Shahin Atin ("Atin Declaration");
- Exhibits 1 through 21 to the Atin Declaration;
- Declaration of Edward P. Zappia ("Zappia Declaration"); and
- Exhibits 22 through 30 to the Zappia Declaration.

On March 28, 2011, Plaintiff filed its Opposition to Defendant's Motion ("Plaintiff's Opposition"). (Doc. No.

61.)[3]  In support of its Opposition, Plaintiff attached the following documents:

- Statement of Genuine Issues of Material Fact and Supplemental Uncontroverted Facts ("Plaintiff's SGI");

- Declaration of Alan G. Crowley ("Crowley Declaration").

On April 4, 2011, Defendant filed its Reply ("Defendant's Reply").  (Doc. No. 63.)

## II.  FACTS

### A.  Uncontroverted Facts

The following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of the Motions.  See L.R. 56-3.

Plaintiff SEIU, Local 721, is a registered employee organization, recognized by Defendant, which represents certain permanent employee classifications within the

_____

[3]In the Court's July 14, 2009, Order ("July 14 Order") granting in part and denying in part then-Defendants' motion to dismiss, the Court noted that "[t]he size of the typeface [Plaintiff] used in the Opposition did not comply with Local Rule 11-3.1.1." (Doc. No. 17 (July 14 Order) at 3 n.2.)  The Court noted explicitly that "[f]uture submissions must comply with all Local Rules."  Nevertheless, Plaintiff again violated Local Rule 11-3.1.1 in both its Opposition and Reply. (See Pl.'s Opp'n at 6, 9, 10; Pl.'s Reply at 3.)  Failure to comply with all Local Rules in future filings will result in sanctions, including striking any noncompliant filings.

County. (Def.'s SUF ¶ 1; Pl.'s SGI ¶ 1.) Plaintiff does not represent the County's Temporary Assistance Program ("TAP") employees, nor does it represent former County employees.[4] (Def.'s SUF ¶ 1, 4; Pl.'s SGI ¶ 4; Ex. 22.)

Defendant is a political subdivision of the State of California and a public agency within the meaning of the California Government Code, sections 3501(c) and 54951. (Pl.'s SUF ¶ 1; Def.'s SGI ¶ 1.) Starting in 1991, with the passage of the Omnibus Budget Reconciliation Act of 1990, state and local governments including Defendant were required to pay the Old Age and Survivor Disability Insurance (OASDI) portion of the Social Security tax for temporary employees not covered by a retirement plan. See Omnibus Budget Reconciliation Act of 1990, Pub. Law No. 101-508, § 11332, 104 Stat. 1388 (amending 42 U.S.C. § 410(a)(7)). Government employers may avoid paying the OASDI Social Security tax for temporary employees if they cover the affected employees with a qualifying "safe harbor" plan. (Pl.'s SUF ¶ 9; Def.'s SGI ¶ 9.)

---

[4] Plaintiff disputes this fact by objecting that the statement is "irrelevant and not a material fact to the extent that it describes Plaintiff['s] relationship with former County employees." (Pl.'s SGI ¶ 1.) The Court overrules Plaintiff's objection as the statement is a material fact relevant to whether Plaintiff has standing to bring this suit. Moreover, Plaintiff has not offered any evidence supporting its dispute of this fact. Accordingly, the Court deems the fact admitted to exist without controversy. See L.R. 56-3.

**1. The 1999 Plan**

On March 16, 1999, the County Board of Supervisors approved a "safe harbor" retirement plan as an alternative to Social Security for the County's Temporary Assistance Program ("TAP") employees. (Pl.'s SUF ¶ 2; Def.'s SGI ¶ 2; Mazur Decl., Ex. A ("1999 Plan").) After the Board of Supervisors' approval, Defendant adopted the 1999 Plan. (Pl.'s SUF ¶ 3; Def.'s SGI ¶ 3.)

The 1999 Plan states that Defendant's purpose for the plan is "to comply with the Omnibus Budget Reconciliation Act of 1990 ('the OBRA Act') and applicable pension provisions of other statutes and substitute benefits provided under [the 1999 Plan] for the benefits provided under Social Security." (Pl.'s SUF ¶ 5; Def.'s SGI ¶ 5; 1999 Plan § 1.02.) The 1999 Plan defines an employee as:

> Any person employed within the meaning of Code Section 3121(b) and Treasury Regulations 31.3121(b)(7)-2(d)(2) as a part time, seasonal or temporary employee by the Employer for whom Social Security contributions would be made but for the Employee's coverage under th[e] [1999 Plan] . . . . Employees [do] not include persons employed in more than one position with the Employer . . . or persons employed in a position that, based on the job classification system, is in an ineligible group for purposes of participation in the [1999] Plan.

(Pl.'s SUF ¶ 6; Def.'s SGI ¶ 6; 1999 Plan § 2.11.) Lakeisha Brazile and Judy Leonard, on behalf of whom Plaintiff proceeds, qualified as temporary employees

under the 1999 Plan documents.  (Pl.'s SUF ¶ 7; Def.'s SGI ¶ 7.)

Under the 1999 Plan, a participant who retires after his or her "normal retirement date" receives a normal retirement benefit "for life equal to one-twelfth (1/12th) of 2% of the Participant's Career Compensation." (Pl.'s SUF ¶ 11; Def.'s SGI ¶ 11; 1999 Plan § 4.01.)  If, however, the participant's "Actuarial Equivalent of the Accrued Benefit is less than $5,000 on an Employee's Termination of Employment . . . the Trustee shall distribute in a single sum . . . to the Participant the Actuarial Equivalent of his or her entire vested benefit earned under [the 1999] Plan . . . ."  (Pl.'s SUF ¶ 12; Def.'s SGI ¶ 12; 1999 Plan § 5.01(b).)  The 1999 Plan defines the "Actuarial Equivalent" as:

> A benefit with the same actuarial value, using the [1999] Plan's actuarial assumptions, as the benefit it replaces.  As of the date of the adoption of [the 1999] Plan, the Plan's actuarial assumptions are an 8% interest rate, and the Unisex Projected (UP) 1984 Mortality table.  However, the Employer reserves the right to amend the Plan to change these actuarial assumptions (retroactively or prospectively), except to the extent that such change would adversely affect the tax qualified status of the Plan, on the recommendation of the Plan's independent actuary.

(Pl.'s SUF ¶ 15; 1999 Plan § 2.04.)[5]  Thus, the 1999 Plan

assumes an 8% annual return on investment.  (Def.'s SUF ¶

7; Pl.'s SGI ¶ 7.)  Section 6.01 of the 1999 Plan

provides that a participant who retires

> before [the] Normal Retirement Age[] shall
> receive a retirement benefit equal to their
> Accrued Benefit payable as a single life
> annuity commencing at the Participant's Normal
> Retirement Date, subject to the exception
> specified in Section 5.01(b), where the lump
> sum Actuarial Equivalent of the Accrued
> Benefit is less than $5,000. Participants are
> 100% vested at all times in their Accrued
> Benefit.

(Def.'s SUF ¶ 10; 1999 Plan § 6.01.)[6]


The 1999 Plan does not provide for single sum

distributions to any participants of at least 7.5% of the

participant's compensation for all periods of credited

service.  (Pl.'s SUF ¶ 21; Def.'s SGI ¶ 21.)[7]

---

[5] Defendant objects to this fact as irrelevant and
immaterial.  The Court overrules Defendant's objections.
Insofar as Plaintiff is challenging the actuarial formula
used in the 1999 Plan, this information is relevant and
material, as it is the definition of the actuarial
formula.
   Defendant also disputes this fact, contending that
"the 2008 Plan uses a 6% interest rate, not 8%."
Plaintiff's citation is to the interest rate in the 1999
Plan, not the 2008 Plan.  Accordingly, Defendant's does
not dispute the interest rate in the 1999 Plan.  The
Court therefore deems this fact uncontroverted.

[6]  Plaintiff does not dispute the Plan's text, but
instead "objects on the basis that it is an improper . .
. conclusion of law."  (Pl.'s SGI ¶ 10.)  The Court
overrules Plaintiff's objection, as Defendant's SUF ¶ 10
contains a portion of the 1999 Plan, and does not contain
any conclusions of law.

[7]  Defendant objects to this fact as irrelevant and
(continued...)

12

## 2. The 2008 Plan

In September 2008, Defendant adopted an amended version of the 1999 Plan.  (Pl.'s SUF ¶ 17; Def.'s SGI ¶ 17; Mazur Decl., Ex. B ("2008 Plan"), Ex. E.)  As discussed in Section II.B.2, _infra_, Plaintiff does not demonstrate that either Lakeisha Brazile or Judy Leonard participated in the 2008 Plan.  Accordingly, the Court does not address the 2008 Plan.

## B. Disputed and Insufficiently Supported Facts

### 1. Lakeisha Brazile

Plaintiff contends "Lakeisha Brazile is a former Riverside County Temporary Assignment Program employees [sic], on whose behalf [Plaintiff] proceeds, and former participant in [Defendant's] 401(a) Retirement Plan for Part-Time & Temporary Help Employees, pursuant to the Plan Document dated April 1, 1999 and Plan Document Dated Sept. 2008."  (Pl.'s SUF ¶ 22.)  Defendant objects to this fact, asserting there is no foundation that Ms. Brazile has ever been a member of Plaintiff.  The Court overrules Defendant's objection, as whether Plaintiff proceeds on behalf of Ms. Brazile is a distinct issue from whether Ms. Brazile is now a member of Plaintiff.

---

[7](...continued)
immaterial.  The Court overrules Defendant's objections. This fact is relevant to Plaintiff's allegations that Defendant is not complying with the federal regulations pertaining to actuarial equivalents for lump-sum distributions.

13

Plaintiff has not supported its proffered fact adequately, however. The only evidence Plaintiff offers to support Ms. Brazile's employment status or participation in either the 1999 or 2008 Plan, is Exhibit J to the Mazur Declaration. Exhibit J is a single page printout that purports to show only that Ms. Brazile received a single, lump-sum distribution on April 24, 2009. (Ex. J.) The document does not demonstrate that Ms. Brazile is a former Riverside County Temporary Assignment Program employee, or that the distribution she received was one made under the 1999 or 2008 Plan.

Nevertheless, Defendant introduced evidence demonstrating sufficiently that Ms. Brazile worked in Defendant's Temporary Assistance Program from October 27, 2005, through March 9, 2008, when she ended her employment with Defendant. (Def.'s SUF ¶ 3; Pl.'s SGI ¶ 3.)[8] Thus, as the evidence before the Court indicates that Defendant employed Ms. Brazile as a TAP employee only, and that Defendant did not adopt the 2008 Plan

_____

[8] Plaintiff objects to this fact as irrelevant because Ms. "Brazile is a plaintiff and suing on her own behalf, separately from SEIU." (Pl.'s SGI ¶ 3.) The Court overrules Plaintiff's objection. Whether Plaintiff represents Ms. Brazile is relevant to whether Plaintiff has standing to bring this action. Moreover, Plaintiff's contention that Ms. Brazile is suing on her own behalf lacks merit. The SAC identifies the named Plaintiff as SEIU, "on its on [sic] behalf, and on behalf of its represented members, Lakeisha Brazile, and Judy Leonard." (SAC at 1.) There is no indication that Ms. Brazile is bringing this suit on her own behalf; accordingly, Plaintiff's contention lacks merit.

14

until after Ms. Brazile left Defendant's employ, the Court finds that Ms. Brazile's distribution was under the 1999 Plan only.

**2. Judy Leonard**

Plaintiff also contends Judy Leonard "is a current Riverside County Temporary Assignment Program employee, on whose behalf [Plaintiff] proceeds, and current participant in [Defendant's] 401(a) Retirement Plan for Part-Time & Temporary Help Employees, pursuant to the Plan Document dated April 1, 1999 and Plan Document dated Sept. 2008." (Pl.'s SUF ¶ 25.) Defendant disputes this fact, but does not offer any evidence supporting the dispute. <u>See</u> Fed. R. Civ. P. 56(c)(1); L.R. 56-3 (requiring a party disputing a fact to support the dispute with a "declaration or other written evidence.").

Plaintiff has not supported its proffered fact adequately. In support of its proffered fact, Plaintiff relies on Exhibit O to the Mazur Declaration. Exhibit O appears to be a summary of Plaintiff's employment information maintained by Defendant. Exhibit O contains no information indicating Ms. Leonard is a current TAP employee, or that she has ever participated in either the 1999 or 2008 Plan.

Nevertheless, Defendant introduced undisputed evidence that Ms. Leonard is currently employed as a full time employee for the County, and is not entitled to benefits under the 1999 Plan until she retires or terminates her employment with Defendant. (Def.'s SUF ¶ 2; Pl.'s SGI ¶ 2; Ex. 20 at 379; 1999 Plan at § 5.01.)[9] Exhibit 20 also contains Ms. Leonard's work history, indicating that between July 9, 2001, and October 21, 2005, Ms. Leonard was employed in the Temporary Assistance Program. (See Ex. 20, 380-83.) As Ms. Leonard ended her employment in the Temporary Assistance Program before Defendant adopted the 2008 Plan, Defendant has established that Ms. Leonard participated in the 1999 Plan only.

### III. LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party must show that "under the governing law, there can be but one

---

[9] Although Plaintiff does not dispute this point, Plaintiff objects that the fact is irrelevant. The Court overrules the objection, as whether Ms. Leonard is entitled to immediate distribution under either the 1999 or 2008 Plan is relevant to Plaintiff's standing to bring this suit, and the ripeness of the issues before the Court. (See infra, Section IV.A.)

reasonable conclusion as to the verdict." <u>Anderson</u>, 477
U.S. at 250.

Generally, the burden is on the moving party to
demonstrate that it is entitled to summary judgment.
<u>Margolis v. Ryan</u>, 140 F.3d 850, 852 (9th Cir. 1998);
<u>Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.</u>, 707
F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears
the initial burden of identifying the elements of the
claim or defense and evidence that it believes
demonstrates the absence of an issue of material fact.
<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

When the non-moving party has the burden at trial,
however, the moving party need not produce evidence
negating or disproving every essential element of the
non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325.
Instead, the moving party's burden is met by pointing out
there is an absence of evidence supporting the non-moving
party's case.  <u>Id.</u>

The burden then shifts to the non-moving party to
show that there is a genuine issue of material fact that
must be resolved at trial.  Fed. R. Civ. P. 56(e);
<u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256.  The
non-moving party must make an affirmative showing on all
matters placed in issue by the motion as to which it has

the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322;
<u>Anderson</u>, 477 U.S. at 252; <u>see also</u> William W. Schwarzer,
A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil</u>
<u>Procedure Before Trial</u>, 14:144.  "This burden is not a
light one.  The non-moving party must show more than the
mere existence of a scintilla of evidence." <u>In re Oracle</u>
<u>Corp. Securities Litigation</u>, 627 F.3d 376, 387 (9th Cir.
2010) (citing <u>Anderson</u>, 477 U.S. at 252).  "The
non-moving party must do more than show there is some
'metaphysical doubt' as to the material facts at issue."
<u>In re Oracle</u>, 627 F.3d at 387 (citing <u>Matsushita Elec.</u>
<u>Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586
(1986)).

     A genuine issue of material fact exists "if the
evidence is such that a reasonable jury could return a
verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at
248.  In ruling on a motion for summary judgment, the
Court construes the evidence in the light most favorable
to the non-moving party. <u>Barlow v. Ground</u>, 943 F.2d
1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv. Inc. v. Pac.</u>
<u>Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir.
1987).

18

# IV.  DISCUSSION

Defendant contends Plaintiff cannot maintain this action because Plaintiff lacks standing to bring the claims, and even if Plaintiff had standing to bring Ms. Leonard's claims, those claims are not ripe.  Defendant is correct.

## A.  Standing

Article III of the Constitution gives federal courts jurisdiction over "cases and controversies."  U.S. Const. Art. III, § 2, cl. 2.  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975). Standing, therefore, is a threshold issue in every federal case.  <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 524 U.S. 1, 11 (2004) ("In every federal case, the party bringing the suit must establish standing to prosecute the action."); <u>Warth</u>, 422 U.S. at 517-18;  <u>McMichael v. County of Napa</u>, 709 F.2d 1268, 1269 (9th Cir. 1983) ("Before the judicial process may be invoked, a plaintiff must 'show that the facts alleged present the court with a 'case or controversy' in the constitutional sense and that [he] is a proper plaintiff to raise the issues sought to be litigated.'"), citing <u>Linda R.S. v. Richard D.</u>, 410 U.S. 614, 616 (1973).

To satisfy the "case or controversy" requirement, a plaintiff "must demonstrate that he has suffered an 'injury in fact'" that a favorable judgment will redress. Whitmore v. Arkansas, 495 U.S. 149, 155 (1990); Newdow, 542 U.S. at 12, citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). In other words, a plaintiff must satisfy "the irreducible constitutional minimum of standing" by demonstrating: (1) he has suffered an "'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) there is a causal connection between the injury and the conduct complained of -- that is, the injury is "fairly traceable" to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it is "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable judicial decision. Lujan, 504 U.S. at 560-61 (footnote, citations, and quotation marks omitted). "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." Whitmore, 495 U.S. at 155-56.

The party invoking federal jurisdiction bears the burden of establishing the elements of standing. Lujan, 504 U.S. at 561, citing FW/PBS, Inc. v. Dallas, 493 U.S.

215, 231 (1990); _Warth_, 422 U.S. at 508.  As the three
elements of standing "are not mere pleading requirements
but rather an indispensable part of the plaintiff's case,
each element must be supported in the same way as any
other matter on which the plaintiff bears the burden of
proof, _i.e._, with the manner and degree of evidence
required at the successive stages in litigation."  _Lujan_,
504 U.S. at 561 (citing _Lujan v. Nat'l Wildlife Fed'n_,
497 U.S. 871, 883-89 (1990); _Gladstone Realtors v.
Village of Bellwood_, 441 U.S. 91, 114-15 & n.31 (1979);
_Simon v. Eastern Kentucky Welfare Rights Org._, 426 U.S.
26, 45 & n.25 (1917); _Warth_, 422 U.S. at 527 & n.6)).
"At the pleading stage, general factual allegations of
injury resulting from the defendant's conduct may suffice
. . . ."  _Id._ (citing _Nat'l Wildlife Fed'n_, 497 U.S. at
889).  At the summary judgment stage, "however, the
plaintiff can no longer rest on such 'mere allegations,'
but must 'set forth' by affidavit or other evidence,
'specific facts,' which for purposes of the summary
judgment motion will be taken to be true."  _Id._; _see also
Fernandez v. Brock_, 840 F.2d 622, 625-26 (9th Cir. 1988)
("Ordinarily, a plaintiff opposing a motion for summary
judgment on [a standing] issue would have to support,
with affidavits or other evidence, the factual
allegations underlying the assertion of standing because
such allegations must ultimately be proven for a
plaintiff to prevail." (citation omitted)).

As the "existence of Article III standing is not subject to waiver," "[f]ederal courts are required sua sponte to examine jurisdictional issues such as standing . . . and if the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (en banc); see also FW/PBS, Inc., 493 U.S. at 231 ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines."); Fed. R. Civ. P. 12(h)(3). "[S]ince standing is an aspect of subject matter jurisdiction, the district court [is] free . . . to find that [a plaintiff] lacked standing for reasons other than those put forward by the [defendant]." Fleck & Assoc., Inc. v. City of Phoenix, 471 F.3d 1100, 1107 (9th Cir. 2006) (citations omitted).

Here, Plaintiff brings this action "on its on [sic] behalf, and on behalf of its represented members, Lakeisha Brazile, and Judy Leonard." (SAC at 1; see also SAC ¶ 7 ("Lakeisha Brazile and Judy Leonard are former or current Riverside County Temporary Assignment Program employees, on whose behalf [SEIU] proceeds . . . .").) Accordingly, to determine whether standing exists, the Court must determine whether Plaintiff can bring the suit on its own, or on behalf of Ms. Brazile or Ms. Leonard.

**1. SEIU's Standing to Bring Claims on its Own Behalf**

"It is well established that an organization 'may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.'" <u>Am. Fed'n of Gov. Emps. Local 1 v. Stone</u>, 502 F.3d 1027, 1032 (9th Cir. 2007) (quoting <u>Warth</u>, 422 U.S. at 511). In order to assert standing, the plaintiff-organization must make the same showings as an individual plaintiff; specifically, that

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Id.</u> (quoting <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180-81 (2000)); <u>see also La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest</u>, 624 F.3d 1083, 1088 (9th Cir. 2010) (noting that "[w]hile the <u>Lujan</u> decision established the 'irreducible constitutional minimum' test for standing in the context of an individual plaintiff, the same analysis is used to determine whether an organizational plaintiff has standing in a particular case." (citing <u>Havens Realty Corp v. Coleman</u>, 455 U.S. 363, 378 (1982))).

In addition to demonstrating a traditional "injury in fact," "[a]n organization suing on its own behalf can establish an injury when it suffered 'both a diversion of its resources and a frustration of its mission.'" See La Asociacion, 624 F.3d at 1088; Havens, 455 U.S. at 378. Here, Plaintiff has not offered any arguments or evidence that Defendant's actions forced Plaintiff to divert its resources, frustrated Plaintiff's mission, or caused Plaintiff any other injury in fact. See Lujan, 504 U.S. at 561 (noting that at the summary judgment stage a plaintiff "must 'set forth' by affidavit or other evidence, 'specific facts,' which for purposes of the summary judgment motion will be taken to be true."); La Asociacion, 624 F.3d at 1088-89 (same) (citing Fernandez, 840 F.2d at 625-26). Accordingly, Plaintiff has not suffered an injury in fact, and has no standing to bring a claim on its own behalf. See La Asociacion, 624 F.3d at 1088-89 (dismissing a plaintiff organization's claim brought on organization's own behalf where organization failed to allege injury in fact). The Court therefore DENIES Plaintiff's Motion and GRANTS Defendant's Motion as to Plaintiff's claims brought on its own behalf.

## 2. SEIU's Associational Standing

The crux of Plaintiff's SAC is not the claims brought on its own behalf, but rather the claims brought on behalf of its members, Lakeisha Brazile and Judy Leonard.

To bring suit on behalf of its members, an association such as Plaintiff must establish: (1) at least one of its members would otherwise have standing to sue in his or her own right; (2) the interests the association seeks to protect are germane to the association's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. <u>Hunt v. Wash. State Apple Adver. Comm'n</u>, 432 U.S. 333, 343 (1977). Plaintiff contends Ms. Brazile and Ms. Leonard have standing to sue in their own right, and thus confer standing on Plaintiff. Plaintiff's contention is incorrect.

### a. Whether the Interests Here are Germane to Plaintiff's Purpose

To establish associational standing, Plaintiff must demonstrate the interests it seeks to protect here are germane to its purpose. <u>Hunt</u>, 432 U.S. at 343. Here, the only evidence as to Plaintiff's associational-purpose is that Plaintiff is a registered employee organization that represents certain permanent employee classifications within the County. (Def.'s SUF ¶ 1; Pl.'s SGI ¶ 1.) Although Plaintiff makes several arguments in its papers that it represents certain County employees, Plaintiff offers no facts demonstrating the scope of the representation for the certain employee classifications within the County. Moreover, Plaintiff

offers no evidence demonstrating that its purpose includes protecting or litigating current members' retirement benefits accrued during a prior employment relationship with Defendant while the members were not affiliated with Plaintiff. Accordingly, as Plaintiff has not "set forth by affidavit or other evidence, specific facts, which for purposes of the summary judgment motion will be taken to be true," establishing that the interests Plaintiff seeks to protect here are germane to its purpose, Plaintiff has not satisfied the second associational standing element. Id.; see also Fernandez v. Brock, 840 F.2d at 625-26 ("Ordinarily, a plaintiff opposing a motion for summary judgment on [a standing] issue would have to support, with affidavits or other evidence, the factual allegations underlying the assertion of standing because such allegations must ultimately be proven for a plaintiff to prevail." (citation omitted)).

Plaintiff's associational standing therefore fails on this ground alone. Nevertheless, even assuming Plaintiff could set forth specific facts demonstrating the interests it seeks to protect are germane to its purpose, Plaintiff still lacks associational standing.

### b. Whether the Claims Asserted or Relief Requested Requires the Participation of Plaintiff's Members

To establish associational standing, a Plaintiff must also demonstrate that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. <u>Hunt</u>, 432 U.S. at 343. In its prayer for relief, Plaintiff seeks, <u>inter alia</u>: (1) a declaration "as to the formula for lump sum distributions of Plan participants who do not qualify for normal retirement benefits;" (2) a declaration "as to the correct interest rate that [D]efendant should have used to determine whether participants were eligible for normal retirement benefits;" and (3) "damages in the amount of benefits lost by Plaintiffs and Plan participants due to defendant's violations of the Plan." (SAC at 18:13-19:5.) Hence, Plaintiff seeks both declaratory relief and monetary damages.

> If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind. [citation] These and later precedents have been understood to preclude associational standing when an organization seeks damages on behalf of its members.

<u>United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.</u>, 517 U.S. 544, 554 (1996) (citation

omitted); _see also_ _Lake Mohave Boat Owners Ass'n v. Nat._
_Park Svc._, 78 F.3d 1360, 1367 (9th Cir. 1995) (finding an
association lacked standing to sue for overcharges paid
by its members because each member's participation was
necessary to prove damages).  Thus, because Plaintiff
seeks damages here, associational standing is precluded
insofar as Plaintiff alleges monetary damages.  _Ak. Fish_
_and Wildlife Federation and Outdoor Council, Inc. v._
_Dunkle_, 829 F.2d 933, 938 (9th Cir. 1987); _see also_
_Warth_, 422 U.S. at 515-16 (analyzing separately a
plaintiff's standing where the plaintiff asserted claim
for damages and injunctive relief).  Insofar as Plaintiff
seeks a declaration or injunction, however, Plaintiff
satisfies this element of associational standing.  _See_
_United Food_, 517 U.S. at 554-55.

### c.   Whether Lakeisha Brazile or Judy Leonard Can Bring a Claim in their Own Rights

To satisfy the final element of associational
standing, Plaintiff must demonstrate constitutional
standing as to at least one member of the organization by
establishing the "irreducible constitutional minimum" for
standing; _i.e._ that (1) the member has suffered an
"'injury in fact' -- an invasion of a legally protected
interest which is (a) concrete and particularized, and
(b) actual or imminent, not conjectural or hypothetical";
(2) there is a causal connection between the injury and

the conduct complained of -- that is, the injury is
"fairly traceable" to the challenged action of the
defendant, and not the result of the independent action
of some third party not before the court; and (3) it is
"likely," as opposed to merely "speculative," that the
injury will be redressed by a favorable judicial
decision.  <u>Lujan</u>, 504 U.S. at 560-61.

### i.  Lakeisha Brazile

The parties do not dispute that Plaintiff does not
represent the County's Temporary Assistance Program
workers.  (Def.'s SUF ¶ 1, 4; Pl.'s SGI ¶ 4; Ex. 22.)
Thus, because Defendant employed Ms. Brazile's
exclusively as a TAP worker (<u>see</u>  <u>supra</u> Section II.B.1),
Plaintiff does not represent Ms. Brazile.  Accordingly,
as to Ms. Brazile, Plaintiff cannot satisfy the first
associational standing requirement because it cannot
establish Ms. Brazile is a member of Plaintiff with
standing to sue in her own right.  <u>Hunt</u>, 432 U.S. at 343.

### ii.  Judy Leonard

Plaintiff also seeks to establish associational
standing by demonstrating Ms. Leonard has standing in her
own right.  <u>See generally</u> <u>Hunt</u>, 432 U.S. at 343.
Although, unlike Ms. Brazile, Ms. Leonard is a member of
Plaintiff's organization, Ms. Leonard still cannot confer
standing on Plaintiff because Plaintiff has not

demonstrated she suffered an injury in fact.  To
demonstrate an injury in fact, Plaintiff must establish
Ms. Leonard suffered "an invasion of a legally protected
interest which is (a) concrete and particularized, and
(b) actual or imminent, not conjectural or hypothetical."
Lujan 504 U.S. at 560-61.

Here, Plaintiff alleges the harm she suffered is the
use under the 1999 Plan of an improper interest rate for
calculating the present value of lump-sum retirement
benefits, which: (1) excludes plan participants from
receiving monthly retirement benefits at the normal
retirement age; (2) underpays those participants who
elect a lump-fund distribution, and (3) under-funds the
1999 Plan by not taking into account the larger number of
participants who qualify for monthly retirement benefits,
or are entitled to a larger lump-sum.  (SAC ¶ 2.)
Plaintiff has not demonstrated Ms. Lenoard suffered any
of these alleged harms.

Rather, Ms. Leonard is still employed by Defendant,
rendering her ineligible to receive benefits under the
1999 Plan until she retires or otherwise concludes her
employment with Defendant.  (Def.'s SUF ¶ 2; Pl.'s SGI ¶
2; Ex. 20 at 379; 1999 Plan at § 5.01.)  Moreover,
Plaintiff offers no evidence indicating Ms. Leonard
intends to retire or conclude her employment with

Defendant, or that she would receive an improper lump-sum distribution if she concluded her employment with Defendant.  Accordingly, any damage Ms. Leonard might suffer is contingent on her concluding her employment with Defendant, and either: (1) receiving a lump-sum distribution that amounts to an allegedly-insufficient amount; or (2) receiving a lump-sum calculated using an improper interest rate.

Thus, as Plaintiff offered no evidence demonstrating Ms. Leonard will suffer an imminent injury, and any injuries alleged are based on contingent events causing a possible future injury, Plaintiff has not demonstrated Ms. Leonard suffered an injury in fact.  <u>Whitmore</u>, 495 U.S. at 158 (citation omitted) ("Allegations of possible future injury do not satisfy the requirements of [Article] III.  A threatened injury must be 'certainly impending' to constitute injury in fact."); <u>see also</u> <u>Bova v. City of Medford</u>, 564 F.3d 1093 (9th Cir. 2009) (finding plaintiffs did not suffer a sufficiently concrete and particularized injury where alleged injury had not occurred and was contingent on two events) (discussed more fully, <u>infra</u>).  Indeed, the "Supreme Court has flatly rejected the contention, intimated by [Plaintiff], that an injury occurring 'some day' can satisfy the injury-in-fact requirement of the standing doctrine."  <u>Schmier v. U.S. Ct. of Appeals for the Ninth</u>

Cir., 279 F.3d 817, 822 (9th Cir. 2002). As Plaintiff
has not demonstrated Ms. Leonard suffered an injury-in-
fact, Ms. Leonard lacks standing in her individual
capacity and, accordingly, Plaintiff cannot rely on Ms.
Leonard to confer standing upon its organization.

**B.    Ripeness**

Even assuming Ms. Leonard has standing, her claims
must also be ripe for adjudication. Lee v. State of Or.,
107 F.3d 1382, 1387 (9th Cir. 1997). "Whereas standing
is primarily concerned with who is a proper party to
litigate a particular matter, ripeness addresses when
that litigation may occur." Id. (citation and emphasis
omitted); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1122
(9th Cir. 2009) ("Constitutional ripeness, in many cases,
'coincides squarely with standing's injury in fact prong"
and "can be characterized as standing on a timeline.'"
(citation omitted)). The "doctrine of ripeness is a
means by which federal courts may dispose of matters that
are premature for review because the plaintiff's
purported injury is too speculative and may never occur."
Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d
1115, 1122 (9th Cir. 2010). "The constitutional ripeness
of a declaratory judgment action depends upon whether the
facts alleged, under all the circumstances, show that
there is a substantial controversy, between parties
having adverse legal interests, of sufficient immediacy

and reality to warrant the issuance of a declaratory judgment." City of Colton v. Am. Promotional Events, Inc., 614 F.3d 998, 1004-1005 (9th Cir. 2010) (citing In re Coleman, 560 F.3d 1000, 1005 (9th Cir. 2009)). Under applicable case law, Ms. Leonard's claims are not ripe.

In Bova v. City of Medford, 564 F.3d 1093 (9th Cir. 2009), the Ninth Circuit addressed a scenario similar to the one here. In Bova, the state statute required that the governing body of a local government that made health care available to its employees must have made the health care coverage available to any employee who retires from the local government, to the extent possible. Id. at 1195. The defendant adopted a policy of discontinuing health care insurance to its employees after the employee retired. Id. at 1094. The plaintiffs were employees of the defendant who were eligible for retirement, had "not yet retired - and thus who ha[d] not yet been denied any benefits - but who s[ought] injunctive and declaratory relief." Id. at 1094-95. The Ninth Circuit raised the issue of subject matter jurisdiction sua sponte. Id. at 1095.

The court first noted that claims are not ripe for adjudication if they "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. at 1096 (citing Texas v. United

*States*, 523 U.S. 296, 300 (1998)). This "is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." *Id.* (citing *Lujan*, 504 U.S. at 560).

The court concluded that the plaintiffs lacked standing and their claims were not ripe because the alleged injury had not occurred, and the injury was contingent upon two events: each plaintiff's retirement, and the defendant's denial of benefits to the retired plaintiff. *Id.* at 1096-97. The court reasoned that "unless and until [the] contingent events occur, neither [of the plaintiffs] will have suffered an injury that is concrete and particularized enough to survive the standing/ripeness inquiry. *Id.* at 1097.

Like the plaintiffs in *Bova*, Ms. Leonard has not yet sustained a concrete and particularized injury. Any injuries are contingent on her retirement from Defendant's employ, and Defendant's distribution of a lump-sum benefit that violates the applicable regulations. Accordingly, as in *Bova*, Ms. Leonard has not "suffered an injury that is concrete and particularized enough to survive the standing/ripeness inquiry." *Id.*; *see also* *Texas*, 523 U.S. at 300 (finding a plaintiff's claim unripe where the court had "no idea

whether or when" an administrative sanction may be
ordered."); <u>Auerbach v. Bd. of Educ.</u>, 136 F.3d 104 (2d
Cir. 1998).  As Ms. Leonard's claims cannot survive the
"standing/ripeness inquiry," she cannot establish an
injury in fact, and, therefore Plaintiff cannot rely on
her claims to confer associational standing.  <u>Bova</u>, 564
F.3d at 1096-97; <u>see also</u> <u>Lujan</u>, 504 U.S. at 560-61;
<u>Hunt</u>, 432 U.S. at 343.  Thus, Plaintiff lacks
associational standing to bring its claims.

     As Plaintiff does not have standing to bring its
claims either in its own right or on behalf of Ms.
Brazile and Ms. Leonard, the Court DENIES Plaintiff's
Motion for Summary Judgment and GRANTS Defendant's
Motion.

**C.   Ms. Brazile and Ms. Leonard in Their Individual**
**     Capacities**

     At the hearing, Plaintiff's counsel asserted that Ms.
Brazile and Ms. Leonard were proceeding in their
individual capacities as well as providing the basis for
SEIU's associational standing.  As set forth in Section
I.A., <u>supra</u>, Plaintiff's contention lacks merit.

     Nevertheless, even assuming Ms. Brazile and Ms.
Leonard were proceeding in their individual capacities,
their claims would still fail.  As to Ms. Brazile, there

is no evidence indicating she complied with the 1999

Plan's mandatory appeals procedure, rendering her claims

premature.  (See 1999 Plan § 8.04 (defining mandatory

appeals procedure); see also Doc. No. 17 (July 14 Order)

at 8-9 noting the exhaustion requirement of the 1999

Plan.).  As to Ms. Leonard, her claims are not cognizable

because they are not yet ripe and she lacks standing to

assert the claims as she has not suffered an injury in

fact.  (See Section IV.A.2.c.ii., supra (discussing

standing); Section IV.B., supra (discussing ripeness).)

Moreover, Ms. Brazile's and Ms. Leonard's claims are

also barred because they are both brought under the 1999

Plan.  At the April 18, 2011, hearing, Plaintiff's

counsel represented that Ms. Leonard participated under

both the 1999 and 2008 Plans.  As discussed above,

however, the uncontroverted evidence demonstrates clearly

that Ms. Leonard ended her employment in the Temporary

Assistance Program before Defendant adopted the 2008

Plan.  Thus, contrary to Plaintiff's counsel's

representation to the Court at the April 18, 2011,

hearing, Ms. Leonard participated in the 1999 Plan only;

neither Ms. Leonard nor Ms. Brazile[10] participated in the 2008 Plan.

In the July 14, 2009, Order granting in part and denying in part Defendants[11] motion to dismiss, the Court ruled that the interest rates Defendant used for the 1999 Plan were permissible under the applicable provisions of the Internal Revenue Code. (See July 14, 2009, Order at 10-13.) Accordingly, the Court dismissed Ms. Brazile's and Tamika Kelly's claims based on their participation in the 1999 Plan <u>without</u> leave to amend. (See <u>id.</u>) And, as the uncontroverted evidence here demonstrates Ms. Brazile and Ms. Leonard only participated in the 1999 Plan, their claims must fail as well.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion and GRANTS Defendant's Motion. The Court DISMISSES Plaintiff's Second Amended Complaint WITHOUT PREJUDICE. See <u>Wasco Prods, Inc. v. Southwall</u>

---

[10] Plaintiff does not dispute that Ms. Brazile participated in the 1999 Plan only. Moreover, any such dispute would be futile as the uncontroverted evidence before the Court indicates that Defendant employed Ms. Brazile as a TAP employee only, and that Defendant did not adopt the 2008 Plan until after Ms. Brazile left Defendant's employ.

[11] At the time of the July 14, 2009, Order, Plaintiff asserted claims against multiple defendants. When Plaintiff filed its Second Amended Complaint, however, it asserted claims against Defendant County of Riverside, only.

<u>Techs, Inc.</u>, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings."); <u>see also</u> <u>La Asociacion</u>, 624 F.3d at 1089 (citing <u>Wasco</u> with approval).  As Plaintiff lacks standing to assert the claims set forth in its Second Amended Complaint, the Court does not reach Defendant's or Plaintiff's arguments as to the merits of Plaintiff's allegations.


Dated: April 27, 2011

_____
VIRGINIA A. PHILLIPS
United States District Judge